IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBIN BRILLANT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-513-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER FOR SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN**, **J.,**

Plaintiff Robin Brillant seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits and supplemental social security income benefits under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because I find the ALJ did not err in assessing the evidence presented in this case and submitting vocational hypotheticals to the vocational expert (VE"), the Commissioner's decision is AFFIRMED, and the case DISMISSED.

**BACKGROUND**

Ms. Brillant was born April 25, 1964. Tr. 62.[1] She left school at 15 and completed two

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 12, 2005.

years of community college, obtaining a licensed practical nursing (LPN) certification. Between 1985 and 2000 she worked as a bookkeeper, medical billing specialist, and LPN. Supp. Tr. 77.[2] Ms. Brillant alleges disability since March 9, 2000, due to cervical injuries sustained in a motor vehicle accident on that date. Tr. 62, 450. At her hearing and in her appeal she asserts that her condition is exacerbated due to long-standing psychological issues. *Id.* at 469, 505, 520-21.

**DISABILITY ANALYSIS**

The Commissioner engages in a five-step process to determine whether a disability exists within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a). Ms. Brillant challenges the ALJ's evaluation of the evidence and his conclusions at step five.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; *see also* Social Security Ruling ("SSR") 96-8p (1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett*

[2]Citations "Supp Tr." refer to indicated pages in the supplemental transcript of the administrative record filed by the Commissioner on June 14, 2005. This transcript does not include additional information, but was filed to address illegible photocopies in the original transcript noted above.

*v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden rests upon the claimant, but if the process reaches the fifth step the burden shifts to the Commissioner to show that jobs within the claimant's RFC exist in the national economy. *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566(b), 416.966(b).

**THE ALJ'S FINDINGS**

The ALJ found that Ms. Brillant's ability to work is limited by muscoskeletal impairments in her cervical spine and shoulders, asthma, and depression. Tr. 27-29. The ALJ also found that Ms. Brillant had "mild" social and cognitive dysfunction stemming from her depression, but did not find her depression severe enough to meet the Listing criteria. Tr. 23.

The ALJ assessed Ms. Brillant's RFC as follows:

> [T]he claimant retains the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently. She can stand and walk 2 hours out of an 8-hour day and sit 6 hours out of an 8-hour day. She should avoid concentrated exposure to dust, fumes, odors and gasses. She is limited to occasional overhead reaching. She is limited to simple, 1-2-3 step work with limited interaction with the public.

Tr. 25-26.

At step five, the ALJ found Ms. Brillant's RFC did not preclude all work in the national economy. Drawing from the vocational expert's testimony, the ALJ identified three examples of work she could perform: (1) small products assembler, (2) eyeglass frame polisher, and (3) mail sorter. Accordingly, the ALJ concluded Ms. Brillant was not disabled under the Act at any time through the date of his decision. Tr. 27-28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court must weigh "both the evidence that supports and [that which] detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This standard is satisfied if there is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where the evidence supports more than one reasonable interpretation, the court "may not substitute its judgement for that of the Commissioner." *Id.*

## DISCUSSION

Ms. Brillant argues the ALJ (1) failed to reach an accurate RFC assessment because he improperly discredited her testimony and several medical source opinions, and (2) relied on inadequate vocational testimony.

### I. Accuracy of the RFC Assessment

A.) Ms. Brillant's Testimony

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In assessing credibility, the ALJ uses the "'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 604 n.5). The ALJ may consider objective medical evidence and the

claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When the ALJ rejects claimant's subjective statements, he must provide "specific, convincing reasons." *Tonapetyan*, 242 F.3d at 1148. This standard is met where the ALJ's findings are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ found Ms. Brillant's testimony "not entirely credible in light of the treatment record and her daily activities" Tr. 24. The ALJ cited four bases for this conclusion. First, he noted the discrepancy between Ms. Brillant's travel ambitions, job search activities, and apparent lack of pain at the hearing with her allegation that she must rest every 15 to 30 minutes. Second, he cited the discrepancy between her alleged long-standing mental impairments, including social anxieties, depression, and impaired concentration, and her activities such as attending parties, eating out, volunteer work, and internet use. Third, the ALJ found a lack of medical evidence supporting Ms. Brillant's stated need for daytime sleep, as well as her allegations of dizziness and fatigue. Finally, the ALJ specifically noted that Ms. Brillant's performance on psychometric tests suggested exaggeration and malingering. Tr. 24.

The ALJ considered appropriate factors and his credibility determination is supported by substantial evidence. The ALJ noted that Ms. Brillant lives alone and is responsible for her own household finances, shopping, cooking, and cleaning. She performs light household chores (excluding mopping, laundry, and activities requiring stooping or crouching), does volunteer work, reads, and uses the internet for 4-8 hours per day. Tr. 24, 119-21. While these basic

activities are not equivalent to sustained exertion required in competitive employment, the ALJ found they are inconsistent with Ms. Brillant's assertions that she must rest most of the day and suffers social anxiety prohibiting her from interacting with the public. Tr. 24. It is appropriate for the ALJ to consider daily living activities in determining credibility and ability to work, and where the ALJ's interpretation of such is rational, the reviewing court must uphold the decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

In addition, Ms. Brillant's documented history suggests malingering and somatization. These traits were first recorded in treatment notes produced by two distinct treating psychologists in 1995 and were cited by evaluating psychologist Joe Wood. Tr. 367, 374, 434. In the present proceedings, Dr. Wood reiterated Ms. Brillant's history of expressing somatic and exaggerated complaints and documented these tendencies via MMPI and TOMM psychometric tests. Tr. 441, 435. The ALJ noted this history and test data in his decision. Tr. 22, 24. Dr. Wood also indicated that "[Ms. Brillant] may not have given her best effort" in neuropsychological testing. Tr. 441. Malingering alone is sufficient reason to reject a claimant's subjective statements. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

For these reasons, the ALJ did not err in assessing Ms. Brillant's credibility.

B.) Physician opinions

In assessing physician evidence, the regulations distinguish between (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. § 416.927(d). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion

carries more weight than that of a reviewing or consulting physician. *Benton*, 331 F.3d at 1036; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The ALJ may reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings "'setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes*, 881 F.2d at 751); *see also Batson*, 359 F.3d at 1195. The ALJ "meet[s] this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof and making findings." *Thomas*, 278 F.3d at 957 (internal quotations omitted). Where a treating physician's opinion is "unsupported by the record as a whole or by objective medical findings" it may be discredited. *Id.*

Here, Ms. Brillant's treating physician, Dr. Long, indicated Ms. Brillant's cervical fusion was healing well and suggested she "pace herself" due to symptomatic pain. Tr. 264-265. Dr. Long also repeatedly restricted her from "regular or modified work," noting that she could not stand or sit for more than two hours. Tr. 262-3. Finally, Dr. Long noted that "pain/fatigue are *not* limiting factors" in Ms. Brillant's overall function. Tr. 263. The ALJ accorded Dr. Long less weight than the examining and reviewing physicians in this case because he found that Dr. Long's opinion that Ms. Brillant could stand, sit, or walk less than 2 hours per day was based on Ms. Brillant's subjective statements and was inconsistent with both her treatment records and her stated daily activities. Tr. 24.

The examining physician, Dr. Thomas, found Ms. Brillant less functionally limited than Dr. Long suggested, but indicated she is limited in her ability to stand and must take frequent

breaks from sitting. Tr. 426. The ALJ considered Dr. Thomas's opinion at length and incorporated it into his findings. Tr. 25. The ALJ accepted Dr. Thomas's findings regarding standing, reaching, lifting, walking and respiratory irritants, but found that his assertion that Ms. Brillant cannot sit for more than two hours was again based on Ms. Brillant's subjective evidence and inconsistent with her daily activities. Tr. 25.

The reviewing physician, Dr. Jensen, found Ms. Brillant limited in reaching overhead and lifting more than ten pounds and noted that Dr. Long's restrictions were not quantified in functional terms. Tr. 286-291. The ALJ accorded significant weight to the reviewing physician, concluding that Dr. Jensen's report was consistent with Ms. Brillant's treatment record. Tr. 25.

I find the ALJ did not err in according less weight to Dr. Long's and Dr. Thomas's opinions to the extent they were based on Ms. Brillant's subjective statements. Dr. Long's record does show evaluative review, but his review reveals grossly normal functioning and does not confirm any of Ms. Brillant's alleged psychological impairments. Tr. 281-82. Similarly, Dr. Thomas conducted a comprehensive examination of Ms. Brillant, but his specific finding that Ms. Brillant is limited in sitting was based upon her subjective statements. Tr. 424.

C.) <u>Nurse practitioner opinions</u>

Ms. Brillant also contends the ALJ gave insufficient weight to the psychiatric evaluations of two nurse practitioners. Tr. 469. Nurse practitioners are not "medical sources," and as such, their opinions are properly afforded less weight. 20 C.F.R. § 404.1513 (excluding nurse practitioner from "acceptable medical source" and including it in definition of "other sources"); *see also Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, as with other lay testimony, the ALJ must give specific reasons that are germane to the witness before rejecting the

evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). A nurse practitioner may be construed as a physician's agent, and therefore treated as a "medical source," if the nurse practitioner functions under the direction of a physician. *Gomez*, 74 F.3d at 970-71.

Nurse Practitioner ("N.P.") Nancy Pitney met with Ms. Brillant twice in October 2002 and reviewed Ms. Brillant's mental health treatment in 2002. N.P. Pitney's initial chart notes indicate Ms. Brillant suffered from "depression and anxiety." Tr. 313. In July 2003, Ms. Brillant's attorney sent N.P. Pitney a "checklist" asking if she agreed that Ms. Brillant suffered from numerous listed conditions not otherwise specified in the record, including recurrent major depression, "Anxiety-related disorder, likely PTSD," "some OCD symptoms," motor tension, autonomic hyperactivity, vigilance, hallucination of traumatic experience, recurring severe panic attacks, signs of manic syndrome, severe agitation, and distractability. Tr. 311-312. Ms. Brillant's attorney suggested that together these alleged impairments would preclude Ms. Brillant's ability to work and asked that N.P. Pitney mark "yes" or "no" in agreement. N.P. Pitney marked the attorney form affirmatively. Tr. 312.

This form does not fully correspond with N.P. Pitney's examination notes in that the notes did not cite motor tension, autonomic hyperactivity, vigilance, hallucination, "manic syndrome," or severe agitation and distractability. Tr. 315-17. Rather, her notes only referred to a "provisional" diagnosis of panic, anxiety, and obsessive-compulsive and post-traumatic stress disorders. Tr. 316.

The second nurse practitioner, Mary Kathryn Thompson, was employed by Legacy Emanuel Pain Management. Tr. 6, 347. The record does not contain any treatment notes by

N.P. Thompson. However, she completed a similar checklist as N.P. Pitney, expressly noting that she did not have an opportunity to review Ms. Brillant's physical complaints. Tr. 347.

The record does not establish that either of these nurse practitioners were a physician's agent as defined in *Gomez*. 74 F.3d at 971. N.P. Pitney was a member of a health care team which assisted Ms. Brillant in the summer of 2002, but N.P. Pitney does not appear to have operated under the direction of a physician.[3] Thus, the ALJ did not err in treating them as non-medical sources. Tr. 25. The ALJ did recite N.P. Pitney's October 2002 notes, but found her assessment via the checklist inconsistent with the symptoms Ms. Brillant described in testimony and manifested in her medical record. Tr. 25. Further, neither the opinion of N.P. Pitney nor N.P. Thompson correspond with or substantiate the material presented by the medical sources reviewed above. Thus, the ALJ did not err in rejecting this evidence.

## II. Reliability of Vocational Evidence

Ms. Brillant's final argument suggests the testimony provided by the vocational expert ("VE") was unreliable because the ALJ posed incomplete hypothetical questions. The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss v Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, the ALJ asked three consecutive hypothetical questions. In the first, he cited limitations discussed above, including a person who would only "occasionally be able to climb,

---

[3]N.P. Pitney copied a physician on her second report, but the record does not suggest that a physician directed her management of Ms. Brillant's mental health treatment. Tr. 317.

balance, stoop, kneel, crouch, crawl and only occasional overhead reaching." Tr. 513. In the second, he added a capability restricted to "simple one, two, three step work because of lapses in concentration and attention and . . . limited interaction with the public." Tr. 513. The third question included "pain and related problems with actually attending work . . . possibly not being able to perform for several hours on several days." Tr. 514.

Ms. Brillant claims these scenarios did not take into account all of her limitations stemming from depression, OCD, and other psychiatric issues. Because the ALJ did not find these additional limitations supported by the record, as discussed above, it was not error for the ALJ to exclude these limitations from his hypothetical questions. *Osenbrock,* 240 F.3d at 1163-65; *Magallanes,* 881 F.2d at 757.

**CONCLUSION**

The errors Ms. Brillant asserts are without merit. The Commissioner's decision concluding she did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED, and the case DISMISSED.

Dated this 9th day of March, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge